IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DES DEVELOPMENT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:19-cv-03379-MDH |
| ) | |
| REVHONEY, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Plaintiff DES Development, LLC's ("DES") Motion for Summary Judgment (Doc. 89). For the reasons set for herein, the Motion is **GRANTED IN PART AND DENIED IN PART**.

### BACKGROUND

DES brought suit to enforce an Equipment Rental Agreement ("ERA") against RevHoney, Inc. (Doc. 73, 1). DES also claims that RevHoney and owners Jerry and Debra Brown breached the November 2019 Mediated Settlement Agreement ("MSA"). *Id*.

1. Equipment Rental Agreement

In September 2018, DES entered into the ERA with RevHoney, through which it leased all the equipment covered by DES's leases with North Star Leasing Company to RevHoney for use in its beverage manufacture, bottling, and distribution operations. *Id*. For the benefit of RevHoney, DES entered into three leases for beverage production and bottling equipment. (Doc. 89 Ex. B-D). On September 18, 2018, DES Development and RevHoney entered into the ERA. DES purchased the equipment at issue in February 2020.

Pursuant to the ERA: "Rent and terms will be Passed through at DES Development LLC cost from NorthStar[sic] Leasing." (Doc. 82 Ex. A, at 1). The ERA further specifies "[i]tems will be added during this lease agreement and again passed through at cost." *Id*.

The September 13, 2018 North Star lease, which was incorporated into the ERA by reference, specified the monthly rental payment for that equipment was $3,711.00 for a period of fifty-eight (58) months. (Doc. 82 Ex. B, at 9). The October 11, 2018, North Star lease, which was incorporated into the ERA by reference, specified the monthly rental payment for that equipment was $2,440.00 for a period of forty-six (46) months. (Doc. 82 Ex. C, at 8). The December 21, 2018, North Star lease, which was incorporated into the ERA by reference, specified the monthly rental payment for that equipment was $1,639.00 for a period of fifty-eight (58) months. (Doc. 82 Ex. D, at 9).

Once the Equipment Rental Agreement was executed, each month RevHoney consistently sent DES Development a check for the payment due on the outstanding North Star leases. (Doc. 89 Ex. A). As the two subsequent North Star Leases were executed—in October 2019 and December 2019, respectively—RevHoney increased its monthly payment accordingly to represent the additional payment obligation. *Id*. RevHoney's monthly obligation to DES for the sub-leased production and bottling equipment was approximately $7,079.00. Without notice to DES, RevHoney ceased making its contractually obligated monthly payments in June 2019. (Doc. 89 Ex. F). According to DES, RevHoney rectified its payment delinquency in November 2019 but otherwise RevHoney has made no payments since. (Doc. 89 Ex. E).

2. Mediated Settlement Agreement

In November 2019, DES demanded payment of $55,000.00 from RevHoney for unpaid lease payments and attorney's fees. RevHoney ultimately did deliver a $55,000.00 check to DES, but before the Mediated Settlement Agreement ("MSA"). (Doc. 89 Ex. E). In November 12, 2019, the parties held an in-person, informal mediation in Springfield, Missouri and reached the resolution described in the Mediated Settlement Agreement dated November 12, 2019. (Doc. 89 Ex. J).

On June 2, 2020, this Court granted RevHoney's Motion to Enforce Settlement Agreement and held that the portion of the parties' MSA relating to the production and bottling equipment—the subject of the ERA—to be enforceable. (Doc. 49). As it relates to the ERA, the MSA contains the following terms:

1. **CONSIDERATION:** As full consideration for the Parties' agreements and the releases, the Parties agree as follows.

    a. **Equipment Rental Agreement:**

        i. The Equipment Rental Agreement dated September 18, 2018 shall be amended to include a purchase option by RevHoney for $1.00 at the end of the rental term as contemplated by the North Star Leasing lease agreements;

        ii. The parties shall cooperate to facilitate future rental payments being funded direct to North Star from RevHoney, Inc.'s business bank account, subject to approval by North Star;

        iii. Debra and Jerry Brown shall execute personal guaranties for the indebtedness contemplated in the Equipment Rental Agreement;

        iv. Pending negotiation of the check received from RevHoney on November 11, 2019, the lawsuit styled *Skipton et al v. RevHoney*, Inc. in the Western District of Missouri shall be dismissed with prejudice.

        v. For clarity, North Star retains ownership of the Equipment

There is no dispute that the ERA has not been amended as required by the MSA, despite at least two attempts by DES. (*See* Doc. 89 Ex. T, U, W, X). RevHoney apparently intends to only amend the ERA in a way that would give it the right to immediately purchase all leased equipment for the $1.00 purchase option noted in the MSA, expressly rejecting the rental terms contemplated in the North Star leases. (*See* Doc. 94, 40-41). It is also not disputed that the Browns have not executed the personal guarantees required by the MSA.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to

give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

1. <u>Equipment Rental Agreement</u>

RevHoney argues that the ERA was not a "formal" agreement (Doc. 94, beginning at 38), and further argues that its intent was simply to reimburse DES for its payments to North Star. *Id*. at 39. However, despite the repeated language that the ERA was not a "formal" agreement, at no point does RevHoney argue that the ERA is unenforceable, void, or voidable. Therefore, because the argument is waived, the Court concludes that the ERA is a binding contract.

DES argues that the North Star leases are incorporated into the ERA. Contract interpretation is a question of law for the Court to decide. *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 231 F. Supp. 3d 313, 320 (W.D. Mo. 2017), aff'd on other grounds, 897 F.3d 987 (8th Cir. 2018) (citing *Barkley, Inc. v. Gabriel Bros.*, 829 F.3d 1030, 1038 (8th Cir. 2016)). In guiding that decision, it is well established that "[i]t is possible for a contract to incorporate the terms of a separate ... document by reference." *Liberty Mut. Fire Ins. Co. v. Centimark Corp.*, No. 4:08-CV-230-DJS, 2009 WL 1588454 at *3 (E.D. Mo. June 5, 2009); *see also State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 810–11 (Mo. 2015).

In Missouri, "matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba." *Metro Demolition & Excavating Co. v. H.B.D. Contracting, Inc.*, 37 S.W.3d 843, 846 (Mo. Ct. App. 2001) (citing *Trantham v. Old Republic Ins. Co.*, 797 S.W.2d 771, 774 (Mo. App. E.D. 1990); *Jim Carlson Const., Inc. v. Bailey*, 769 S.W.2d 480 (Mo. App. W.D. 1989) (held a contract for construction validly incorporated by reference general condition requiring arbitration of disputes)).

To incorporate terms into a contract by reference under Missouri law, "the intent to incorporate must be clear, and the contract must make [ ] clear reference to the document and describe [ ] it in such terms that its identity may be ascertained beyond a doubt." *See Hardwood Lumber, Inc. v. Brewco Inc.*, No. 3:18-05088-CV-RK, 2019 WL 1672295, at *3 (W.D. Mo. Apr. 17, 2019) (quoting *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Products, Inc.*, 887 F.3d 413, 415 (8th Cir. 2018)). "[M]atters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba." 5 *Am. Piping Products, Inc.*, 887 F.3d at 415–16 (internal citations and quotations omitted). Further, "[t]here is no requirement that an incorporated document be attached to the contract or provided to the parties prior to the execution of the contract." *State ex rel. Pinkerton v. Fahnestock*, 531 S.W. 3d 36, 15 (Mo. banc 2017).

DES contends that the North Star leases have been incorporated into the ERA. Specifically, the ERA states:

**Rental Rate:**

Rent and terms will be Passed through at DES Development LLC cost from NorthStar Leasing. Items will be added during this lease agreement and again passed through at cost.

Here, there were three leases entered into between DES and North Star Leasing. (Doc. 89 Ex. E). There is little argument as to which leases and which terms the ERA was referring to. RevHoney's directors, Jerry and Debra Brown, executed personal guarantees for two of the three leases, so RevHoney had actual knowledge of the North Star leases, the monthly rents owed, and the terms of the same. Similarly, RevHoney executed a corporate guarantee for the liabilities contemplated by the December 21, 2018 North Star lease. (Doc. 89 Ex. D). RevHoney does not dispute that the North Star leases were incorporated into the ERA.

6

Case 6:19-cv-03379-MDH   Document 102   Filed 05/06/21   Page 6 of 12

RevHoney's principle argument is that once DES purchased the equipment in February 2020, RevHoney no longer had any obligation to make lease payments. Specifically, RevHoney believes that once there was no longer a pass-through lease, the ERA did not apply. (*See* Doc. 94, generally). The Court finds no merit in that argument. As noted above, the rental terms were clearly laid out in the North Star leases. The September 13, 2018 North Star lease which was incorporated into the ERA by reference specified the monthly rental payment on for the that equipment was $3,711.00 for a period of fifty-eight (58) months. (Doc. 89 Ex. B, at 9). The October 11, 2018, North Star lease which was incorporated into the Equipment Rental Agreement by reference specified the monthly rental payment on for that equipment was $2,440.00 for a period of forty-six (46) months. (Doc. 82 Ex. C, at 8). The December 21, 2018, North Star lease which was incorporated into the Equipment Rental Agreement by reference specified the monthly rental payment on for the that equipment was $1,639.00 for a period of fifty-eight (58) months. (Doc. 82 Ex. D, at 9).

There is no authority to support the contention that once DES purchased the equipment the North Star lease terms became inactive. Both DES and RevHoney were parties to the North Star lease, and DES is entitled to act as the sole lessor particularly in light of the personal and corporate guarantees provided in the original leases. In the ERA itself, DES is already defined as "OWNER" as the term is used throughout the document. (Doc. 89 Ex. A).

Furthermore, "[w]hen interpreting contracts, [courts attempt] to avoid absurd results." *TNT Amusements, Inc. v. BFC Enterprises, Inc.*, No. ED-108209, 2020 WL 2529525, at *5 (Mo. App. E.D. 2020) (mem. op.) (quoting *Guller v. Waks*, 550 S.W.3d 505, 510 (Mo. App. E.D. 2017)). "[Courts] interpret contracts to reach fair, reasonable, and practical results, for it is to be presumed that the parties contracted to that end." *See TNT Amusements, Inc.*, 2020 WL 2529525, at *5

(quoting *Patterson v. Rough Road Rescue, Inc.*, 529 S.W.3d 887, 894 (Mo. App. E.D. 2017)). Courts will reject interpretation of a contract that yields unreasonable results when a probable and reasonable construction can be adopted. *See id.*; *Belton Chopper 58, LLC v. North Cass Dev., LLC*, 496 S.W.3d 529, 532 (Mo. App. W.D. 2016). To allow RevHoney to maintain the equipment that it has not fully paid for under the terms provided by the North Star leases and incorporated into the ERA would yield an absurd result, which the Court seeks to avoid.

It is undisputed that RevHoney has not paid the entirety of its obligation for the leases of the equipment. RevHoney ultimately made payments through at least November 2019 (about twelve months in rent) but has not made all payments which are due under the leases.[1] Accordingly, RevHoney is in breach of the ERA, and the damages are calculated below.

2. Mediated Settlement Agreement

RevHoney argues that DES was the first party to breach the MSA because this suit allegedly should have been dismissed pending the negotiation of the $55,000.00 paid to DES by RevHoney, which is reflected by element (iv) of the MSA as shown above. However, this was just one requirement of the MSA and the other elements remain unmet. Further, the payment was made before the MSA was actually executed. (Doc. 89 ¶ 10). This $55,000.00 was tendered as consideration for Plaintiff passing the then-scheduled hearing on its requested temporary restraining order. *See id.* ¶¶ 8–10. The general rule is that past or moral consideration is not sufficient to support a promise. *See Garrett v. American Family Mutual Ins. Co.*, 520 S.W.2d 102, 111, n. 2 (Mo. App. 1975). Therefore, contrary to Defendants' repeated assertion, the $55,000.00 check from November 2019 is not legally competent consideration to support the MSA. Regardless, the obligation of DES to dismiss the litigation is found to be dependent upon

---

[1] It is disputed whether any further rent payments have been made.

RevHoney's and the Browns' compliance with the terms of the Mediated Settlement Agreement. If they had done so, DES might well have been obligated to dismiss this action.

    a. RevHoney

RevHoney was required to, with DES, amend the ERA to include a purchase option of $1.00 at the end of the rental term as contemplated by the North Star lease agreements. It is undisputed that the ERA has not been amended. RevHoney has refused to agree to any amendment that does not allow them to immediately exercise the $1.00 purchase option, based on its invalid assertion that the rental term ended once DES purchased the equipment. (*See* Doc. 94, 40). While under the mediation agreement RevHoney is entitled to buy the equipment subject to the lease for the sum of $1.00, that buyout right vests only when all lease payments have been made. The rental terms, as discussed above, are dictated by the North Star leases, and RevHoney cannot exercise a purchase option until those terms of length have expired. Therefore, RevHoney has breached the MSA.

    b. Jerry Brown and Debra Brown

Jerry and Debra Brown were required under the MSA to execute personal guarantees for indebtedness as contemplated by the ERA. There is no dispute that they have failed to do so. Defendants' only stated reason for breaching the MSA by not executing personal guaranties is their unsupported belief there are "no lease agreements" so there was nothing for them to guarantee. (Doc. No. 94 § IV(C)(3)). As discussed above, there are valid lease agreements and a valid settlement agreement. The Browns breached the terms of the MSA. Their breach of the MSA makes them liable for any amounts RevHoney is ultimately found due to DES for the breach of the ERA.

3. <u>Damages</u>

Upon finding RevHoney to be in breach of the ERA, the Court concludes that the appropriate amount of damages owed by RevHoney is equal to the remaining lease payments for the entirety of the three North Star leases as was contemplated by the pass-through lease agreement in the ERA. DES alleges that RevHoney still owes 45 payments of $3,711.00 on the September North Star Leasing Co. Lease, or $166,995.00; 34 payments of $2,440.00 on the October 2018 North Star Leasing Co. Lease, or $82,960.00; 47 payments of $1,639.00 on the December 2018 North Star Leasing Co. Lease, or $77,033.00. In total, DES asserts that RevHoney owes $326,988.00 in contractually obligated payments under the ERA. RevHoney asserts that it has made approximately $30,000 more in payments to DES than DES gives it credit for in its request for damages.

The Court agrees that RevHoney owes DES all payments that were due under the original ERA if the leases between DES and North Star, which were incorporated into the ERA, had gone to full term. However, the total amount of payments RevHoney has made to DES to date is disputed. DES claims that RevHoney has paid $84,948.00 under the ERA whereas RevHoney claims it has paid $115,770.01. The facts and materials provided by the parties in their briefings on this Motion are inadequate to resolve this genuine dispute of material fact. The sole issue remaining for trial is the issue of what sums paid by RevHoney should be credited to the amount it owes DES against the lease obligation under the ERA if the parties cannot resolve this issue themselves.

4. <u>Attorney's Fees</u>

According to their terms, both the Equipment Rental Agreement and the MSA provide that a prevailing party is entitled to recover its reasonable attorneys' fees, costs, and expenses. If a

10

Case 6:19-cv-03379-MDH   Document 102   Filed 05/06/21   Page 10 of 12

contract provides for the payment of attorney's fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party. *Clean Unif. Co. St. Louis v. Magic Touch Cleaning, Inc*., 300 S.W.3d 602, 612 (Mo. Ct. App. 2009) (citing *Sheppard v. East*, 192 S.W.3d 518, 523 (Mo. App. 2006)). Appellate courts consider the trial court to be an expert on the amount of attorney's fees to be awarded. *Magic Touch Cleaning, Inc*., 300 S.W.3d at 612. The court that 'tries a case and is acquainted with all the issues involved may fix the amount of attorneys' fees without the aid of evidence. *See id*. (citing *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21 (Mo. banc 1980)) (internal quotations removed). The determination of the amount of attorney's fees is within the sound discretion of the trial court, and we will not reverse unless the award is arbitrarily arrived at or is so unreasonable that it indicates indifference and a lack of proper judicial discrimination. *Magic Touch Cleaning, Inc*., 300 S.W.3d at 612.

The September 18, 2018, Equipment Rental Agreement specifically provides that RevHoney, the "Renter," shall pay:

> [A]ll reasonable attorney and other fees, the expenses and costs incurred by [DES] in protection [of] its rights under this [Equipment Rental Agreement] and for any action taken [by DES] to collect any amounts due [DES] under this [Equipment Rental Agreement].

(Doc. 89 Ex. A)

Similarly, the MSA contains an express provision entitling DES to recover its attorneys' fees in this case. (Doc. 89 Ex. J) Specifically, the MSA provides that:

> In the event that any action or proceeding is brought to interpret or enforce any of the terms and conditions of this Agreement, the prevailing Party shall be entitled to

11

Case 6:19-cv-03379-MDH   Document 102   Filed 05/06/21   Page 11 of 12

have and recover from the other Party all costs and reasonable attorneys' fees incurred in connection therewith.

The Court finds that DES is entitled to recover attorney's fees, the amount of which will be determined at the end of litigation in this case.

## CONCLUSION

Wherefore, for the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment (Doc. 89). Summary judgment is granted against RevHoney, Inc. for breach of contract under the Equipment Rental Agreement. Summary judgment is granted against RevHoney, Inc. for breach of the Mediated Settlement Agreement. Summary judgment is granted against Jerry Brown and Debra Brown for their failure to execute personal guarantees in breach of the Mediated Settlement Agreement. The sole issue remaining for trial is the issue of what sums paid by RevHoney, Inc. should be credited to the amount it owes DES against the lease obligation under the Equipment Rental Agreement. The case remains scheduled for jury trial on the remaining issue of the amount of payments previously made by RevHoney, Inc. that should be credited toward the total lease payments due.

**IT IS SO ORDERED.**

Dated: May 6, 2021

                                              */s/ Douglas Harpool*
                                              **DOUGLAS HARPOOL**
                                              **United States District Judge**